# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | |
|---|---|
| **PHILLIP MORRIS NAPIER—THU PEOPLES HERO** *and Candidate for Governor of Maine,* ) ) ) ) | |
| **PLAINTIFF** ) ) | |
| **v.** ) ) | **CIVIL NO. 06-151-P-H** |
| **JOHN ELIAS BALDACCI,** *Current Governor of Maine,* **ET AL.,** ) ) ) | |
| **DEFENDANTS** ) | |

## ORDER ON MOTION FOR EMERGENCY HEARING

The plaintiff is a candidate for the office of Governor in the upcoming election. On September 11, 2006, he filed a federal complaint against state officials, asking this court to find:

1. "that [his] legal name has been and still is: "Phillip Morris NaPier – Thu PeoPles Hero, Phillip with a smile";[1] and

2. "that the legal name of [his] political party is: the "Pissed Off Patriots."

He also asks this court to order the Secretary of State of Maine:

[1] "to list [his] name on the November 7, 2006 ballot, first name last and last name first, as follows: 'Thu PeoPles

---

[1] Exhibit A is a copy of the plaintiff's business card, demonstrating what he means by "Phillip with a smile." The Assistant Attorney General reported at the hearing that the Secretary of State says that the office is technologically unable to put the "smile" on the ballot. The plaintiff responds that if it can be reproduced on his business card, it can be reproduced on a ballot.

Hero – Phillip Morris NaPier.'"

[2]   "to list the name of [his] party as: the 'Pissed off Patriots.'"

Moreover, "[b]ecause of the delay of 'game' and the extra difficulties put upon [him] by the defend[a]nts," the plaintiff asks for a money penalty against state officials "because of their intentional disregard for the rule of law." For this relief, he cites 5 U.S.C. § 1502, the so-called Hatch Act, complaining that the defendants "have used their positions in government and 'their' official authority to affect the result of an election. 'They' have 'intentionally' put me at a disadvantage to my compet[i]tors in this political contest for Governor of Maine." With his complaint, the plaintiff also filed a Motion for Emergency Hearing (Docket Item 2), "so that this issue of my 'legal' name and that of my political party, can be resolved so that the 'printing of ballots' will not be delayed."

I held an emergency hearing on September 13, 2006. The plaintiff appeared *pro se* and the Attorney General's office represented the state defendants. I treat the plaintiff's motion as a motion for a temporary restraining order.

The four factors that govern a federal court in deciding whether to issue a temporary restraining order are well known:

(1)   the likelihood of success on the merits;
(2)   the anticipated incidence of irreparable harm if the injunction is denied;
(3)   the balance of relevant equities (*i.e.*, the hardship that will

2

befall the defendant if I order relief, contrasted with the hardship that will befall the plaintiff if I refuse); and

(4)    the impact, if any, on the public interest.

Borinquen Biscuit Corp. v. M.V. Trading Corp. 443 F.3d 112, 115 (1st Cir. 2006). The likelihood of success on the merits is the most important. New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002) ("The sine qua non of this four-part inquiry is likelihood of success on the merits . . .").

I focus on the plaintiff's likelihood of success on the merits *in this federal court.* Federal courts are courts of limited jurisdiction, Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994); they can act *only* if they have jurisdiction.   In this case, there is obviously no diversity of citizenship jurisdiction, 28 U.S.C. § 1332; any jurisdiction must be based upon a federal question, 28 U.S.C. § 1331.   All the claims that the plaintiff makes in his complaint (*e.g.*, the correct interpretation of his legal name, specifically, what is his last name; Maine legal requirements on how ballots are to list candidates' names and how ballots are to list candidates' political designations when they are not enrolled in a party; what words are "profane," "contemptuous" or "prejudicial" under state law) seem to invoke Maine law, except for his reference to the federal Hatch Act, 5 U.S.C. § 1502, a subject to which I will return.   Moreover, this controversy involves a *state* election, a matter in which a federal court should intervene only in narrow, specified, circumstances.   Bonas v. Town of N.

3

Smithfield, 265 F.3d 69, 74 (1st Cir. 2001) ("Election law, as it pertains to state and local elections, is for the most part a preserve that lies within the exclusive competence of the state courts.").

Since the plaintiff's complaint does not specify the jurisdictional basis for relief in federal court, I asked him at the hearing why he believed this federal court should have jurisdiction. To paraphrase his answer, he believes that all state officials, including state judges, are "one team" that he doesn't trust, and that he trusts only a federal court to rule fairly on his claims. Although perhaps flattering, that statement is not enough to confer federal jurisdiction.

I have entertained the possibility (suggested by the Assistant Attorney General at the hearing) that perhaps a First Amendment argument ultimately underlies the plaintiff's position in asking a federal court to intervene in this state election controversy. I am not persuaded. First, regardless of my ruling, the plaintiff will be on the November ballot and his identity will be apparent to those who wish to vote for him. To be sure, if the Secretary of State's determination stands, he will not have the advantage of being listed on the ballot itself as "Thu PeoPles Hero," nor the advantage of attracting in the voting booth the votes of those who, merely seeing his political identification, decide to join him then as "Pissed off Patriots." Nevertheless, there are no restrictions on his campaigning under his chosen name and chosen designation. The Secretary of State has

4

restricted only what can appear on the ballot.  The First Amendment issues, therefore, are circumscribed.  See Rubin v. City of Santa Monica, 308 F.3d 1008 (9th C9r. 2002) (upholding refusal to list candidate as "peace activist" on city election ballot); Timmons v. Twin Cities Area New Party, 520 U.S. 351 (1997) (upholding Minnesota law prohibiting candidate appearing on the ballot as a candidate of more than one party).

Moreover, even if the plaintiff does have a legitimate First Amendment concern about the ballot (not mentioned in his complaint nor at the hearing), there are questions of Maine statutory law that require resolution before I would reach the constitutional issues.  See Harris County Comm'rs Court v. Moore, 420 U.S. 77, 83 (1975) ("[W]hen a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question.") (citing Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941)).

The unsettled questions of state law include the following:

1.     Maine's ballot law states:  "The ballot must contain the name, without any title, . . . of each candidate, *arranged alphabetically with the last name first*," 21-A M.R.S. § 601(2)(B), or for a nominee, "*last name first* followed by the first name and middle name or initial; or *last name first* followed by the first name or

5

the first initial and the middle name." <u>Id</u>. at § 601(2)(H)(emphasis added).  Does this ballot provision refer to the candidate's legal name, or some other definition such as a commonly used name?  The statute is silent.  The Assistant Attorney General told me at the hearing that in the past the Secretary of State has not interpreted this provision to mean only the legal name, but has allowed something other than the legal name if the candidate gives evidence of usage. Apparently, previous controversies with a candidate over name listings have been resolved by agreement.  And if the name is too long to fit the ballot layout—also the assertion here—abbreviations have been agreed upon.  It was not clear to me at the hearing whether the Secretary of State has ever previously prevented a candidate from using his/her legal name.)  Here, the Secretary of State's office states that it has relied on the plaintiff's usage of his name in other contexts to support denying the way he wants to be listed on the ballot, even if his request accurately reflects his legal name as determined by the Probate Court.

2.    There is a dispute about what the Probate Court decree means.  The Probate Court changed the plaintiff's name to Phillip Morris Napier– Thu Peoples Hero.  Compl., Ex. 2 (Docket Item 1).  What is the plaintiff's last name after this probate court decree?  The plaintiff says that it is "Thu PeoPle's Hero."  The Secretary of State says that it is "Napier-Thu PeoPle's Hero."

3.    As an unenrolled candidate, the plaintiff is entitled to a listing of his

"political designation."   It "may not exceed 3 words in length . . . and may not consist of or comprise language that is obscene or violates any other provision of the laws of this State with respect to names."  <u>Id</u>. § 354(1).  The Secretary of State does not suggest that the plaintiff's choice, "Pissed off Patriots," is obscene, but does argue that it violates other laws.  For that argument, the Secretary of State relies on four statutes, regulating: (1) the names of nonprofit corporations, 13-B M.R.S.A. § 310-A; (2) the names of limited partnerships, 31 M.R.S.A. § 403-A; (3) vanity plates for motor vehicles, 29-A M.R.S.A. § 453(3-A); and (4) trademarks, 10 M.R.S.A. § 1522(1)(H).   The first two are explicitly "laws . . . with respect to names."  They prohibit in relevant part "language that is obscene" and a name that "[i]nappropriately promotes abusive or unlawful activity."  These restrictions do not seem to prevent the use of "Pissed off Patriots."   Only the other two statutes, which do not deal explicitly with names, carry a broader prohibition of "contemptuous, profane or prejudicial" language.   Are these latter two statutes "laws of this State with respect to names" as referred to in the ballot statute?  If they are, is the phrase "Pissed off Patriots" "contemptuous, profane or prejudicial" as those statutes use the terms?  (The plaintiff asserts that the word "pissed" was used most recently on National Public Radio's "Prairie Home Companion," a family-entertainment program.)[2]

---

[2] The corporate and partnership name statutes also prohibit names that "[f]alsely suggest an
*(continued on next page)*

4.      Finally, there is the state law question of how much discretion should be accorded the Secretary of State in interpreting this ballot provision.[3]

Without an explicit invocation of First Amendment rights as a basis for this federal court to intervene in a state election, along with a showing of a serious infringement of those rights, I decline to embark upon interpreting these state law ambiguities.  As for the one explicit federal claim, the Hatch Act claim in the complaint, the federal statute in question provides no private cause of action to give the plaintiff relief.  Hall v. Clinton, 285 F.3d 74, 83 (D.C. Cir. 2002).

I conclude, therefore, that the plaintiff has no likelihood of success in obtaining relief on his claims *in this federal court*.  Because success is so unlikely in this federal court, I do not address the other factors for injunctive relief.  See Pye v. Sullivan Bros. Printers, Inc., 38 F.3d 58, 67 (1st Cir. 1994) ("The district court did not analyze the Board's petition under the remaining three

---

association with public institutions; or [v]iolates any other provision of the law of this State with respect to names."  13-B M.R.S.A. § 301-A(3)(C-D) (Corporate) and 31 M.R.S.A. § 403-A(4)(G-H) (Partnership).  The vanity plate statute, along with prohibiting language that is "obscene, contemporaneous, profane or prejudicial," also prohibits language that "[p]romotes abusive or unlawful activity; [f]alsely suggests an association with public institutions; or [i]s duplicative." 29-A M.R.S.A. § 453(3-A)(B-D).  And the trademark statute lists many other prohibitions that are also unrelated to this matter.  10 M.R.S.A. § 1522(A-J).

[3] I understand the Secretary of State's concern, that if the plaintiff is allowed to change his name so as to enhance his campaigning advantage on the ballot, the floodgates will open.  But it is a question for the state courts whether that issue can be cured by the Secretary of State's interpretation or requires a statutory alteration.  According to Maine's Law Court, "We defer to the Secretary's interpretation if the statutes or statutory scheme are ambiguous and if his interpretation is reasonable."  Arsenault v. Secretary of State, 2006 ME 111 (2006).  In Arsenault, *(continued on next page)*

requirements for injunctive relief, and we see no need to engage in that exercise here.  Without a clear likelihood of success, injunctive relief would not have been just and proper.").  I express no view about whether the plaintiff should succeed in state court on the state law issues.

The motion for temporary restraining order is **DENIED**.  If the plaintiff is entitled to any relief, he should proceed quickly to state court.  The three-delay caused by this federal filing should not affect any rights he has there.  (If he has delayed too long, that delay occurred before the federal suit was filed, not in the last three days; if the Secretary of State has already taken actions that would prevent relief, they were taken before notice of the federal lawsuit, not during the past three days.)  I express no opinion on whether the Secretary of State has correctly interpreted Maine's ballot law in determining how the plaintiff's name shall be listed as a candidate for governor, nor on whether the Secretary of State has correctly interpreted Maine statutes on what language must be kept off the ballot.  Those are matters for the state court.

**SO ORDERED.**

**DATED THIS 14TH DAY OF SEPTEMBER, 2006**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

however, the court found the statute unambiguous and overruled the Secretary of State's interpretation.

*Exhibit A*

